Good morning, Your Honors. My name is Michael Bernacchi. May it please the Court, I would like to keep three minutes of my time for rebuttal. Manage your own time. Thank you. I am representing Hartford Life and Accident Insurance Company and the Oracle Long Term Disability Plan, who are the appellants in this particular case. I realize, I want to start off by noting, I realize that the benefits in dispute in this case aren't that However, we also have a $245,000 attorney fee award on top of those. That's kind of driving the train, isn't it? What's that? That's driving the train. That is driving the train. I do think there's a lot of issues here that warrant Ninth Circuit guidance, you know, how to use the Social Security awards that come in after the trial. But that being said, we wouldn't be appealing a $36,000 judgment except for a $245,000 attorney fee award. So, yes, you are right. That is driving the train. Chronologically, what I would like to do is talk a little bit about the Social Security award and then get to the attorney fee. Well, it was unusual to admit it, I think. But the district court went through the factors and said, under these circumstances, I think it's admissible. What's wrong with that? I mean, if he hadn't gone through the analysis, I'd feel differently, perhaps. Well, I think it's two things. One, I think that at the time the district court admitted it, there was insufficient evidence to establish a disability. The case had been tried. The evidence had come into the record. And simply coming with after-acquired evidence to try to change the outcome of the administrative record is generally frowned upon by the Ninth Circuit. In Opeta, when the defendants tried to do that, when they tried to show surveillance videotape of an individual working that showed he wasn't disabled, that wasn't part of the administrative record, the Ninth Circuit said you couldn't do that. But don't we have an abuse of discretion standard here? Did the trial judge abuse his discretion in allowing that into the evidence? I believe that's correct, Your Honor. But there's another point I want to make, too, which is we have the Social Security Award in front of us. It's part of the record. The court can look at it. The simple fact is this Social Security Award was used as a tiebreaker, and the Social Security Award itself doesn't provide any evidence upon which the district court could have basically utilized it to award benefits to Mr. Nagy because the entire record from the Social Security Administration was not submitted. No, but what I took the district court to be saying is that here's another body with a higher standard for disability, and there's been an adjudication. I would argue that that's, if that's the case, and I think you're right. He said they arrived at this conclusion, but he didn't go deeper. And I'm not sure that that is a proper analysis under a de novo review under ERISA. The simple fact is the Social Security judge said, look, both of our doctors have reviewed Mr. Nagy's records. We find he can work in a sedentary occupation, gainful employment. I believe he can work in a sedentary occupation, gainful employment. So he's not disabled up until age 50. But up until age 50, the Social Security disability rules change. He has to basic, he can't transition to other work. So we have to show basically that he wasn't able to do his past occupation of a software control person. What the Court did is he took in evidence from a vocational expert. He apparently — and I think that's in the record, I could cite it — asked him a hypothetical question, which that vocational expert answered, to the Court's satisfaction in that Mr. Nagy couldn't go back to his past related work. The problem I have is we don't have that testimony. We don't know what that vocational question and hypothetical question was. So you have the District Court just simply relying on the administrative law judge that Mr. Nagy was not able to, you know, work as a quality control analyst for Oracle Corporation without any kind of in-depth analysis. And in contrast to that, what you actually had was Hartford having four different medical reviewers say he did have the capacity to continue to work in his occupation. You had evidence that came out during trial which showed that Mr. Nagy actually reported to his treating physician for the first eight months of his, while he was out on disability, that he was doing fine. It was only after Hartford contacted him and Mr. Nagy contacted Mr. Padway, his attorney, that Mr. Nagy went to his treating physician, asked to have disability forms filled out and started complaining of malaise, fatigue, depression, things of that nature. You also have the fact that for the vast majority of the claim, the only individual that was certifying Mr. Nagy's disability was his treating physician, Dr. Early. Two different doctors called Dr. Early and he reported to both of them basically that his findings on exam were essentially normal. The physical exams were essentially normal. These were all based on Mr. Nagy's self-reports. So you weigh that evidence against the Social Security Award and you look at the Social Security Award, all it contains is a conclusion. We don't know how this administrative law judge got to it. I don't think these should be used as tie-breakers basically. So it's not clear that it's a tie-breaker. The first question is whether it's admissible. Yes. The court went through an analysis and concluded it was admissible. So let's take that. Okay. If that was proper under an abusive discretion standard, then is there enough in the record to support the ruling that there was, that Nagy was entitled to own occupation benefits? I would argue no, because at the end of the day, if you look at the entire record, the Social Security Award comes down to a vocational expert's testimony that we don't know anything about. I think that if you're going to start But how do we know that the district judge wasn't convinced by the treating physician? I mean, you're saying the treating physician was only relying on subjective self-reports, but maybe, I mean, we do defer, at least in the Social Security context, to treating physicians. So, I mean, you're spinning it that it was a tie and then the Social Security pushed it over, but we don't really know that that's how the district judge looked at it, do we? Well, I mean, obviously, the district, and in fairness, the district judge did go through and talk about Dr. Earley and spend some time on there. So you're right. I mean, that's the district. That is my spin on it. I think my spin is correct, if you actually look at the record, but that's fine. But we're reviewing this for clear error, aren't we? Well, as is, I've been in front of this Court before, and when I make that argument, they point out that the administrative record is the administrative record. You're not weighing testimony or truthfulness. They have the same documents in front of them that the district court has in front of it. So they can basically look at these records and see if there was a clear error. But I'd like to pivot a little bit to the attorney's fees, because you're right, that's driving the boat. Again, we would not be here over $36,000 in benefits. But as soon as Mr. Padway raised the Social Security Award, or mentioned the Social Security Award at trial, I knew at that point in time, given what's happening with these ERISA cases and the amount of fees that are coming out, that there was — this could be a potentially bad decision if it went against us. And I think the problem I have with the district court's opinion is if it was going to consider the Social Security Award, and if it — you know, I believe it was just positive, but that's fine. So the court awarded the benefits. We would have paid the $36,000. But then what happened is there was a fee claim for $280,000. And I think the court failed to consider, and I think this was especially the magistrate judge, that at the time we made the decision, I think even the district court would say it was correct. The simple fact is there was this later-acquired Social Security Disability Award that changed the district court's opinion, or at least gave more weight to the wasn't even actually created at the time we made our decision. Well, but don't you — in your attorney's fees argument, don't you have to challenge the number of hours or the rates that were — and you do in your briefs do that. Yes. But didn't the magistrate judge in some detail describe the hourly rate? I mean, the magistrate judge — I'm looking at page 4 of the R&R — says judges in this district have awarded Mr. Padway $675 per hour, and then refers to a recent decision where he got in the Lynn case that amount. And there's several other references to this amount as being reasonable in that district for this type of work. Aren't you kind of bound by those findings? Well, that's why we took this up on appeal. That's the problem we're having with this. The district courts, I think, want to cut these fees, but they're looking at Ninth Circuit case law. And Ninth Circuit case law is essentially, look, at whatever they claim, you can basically — you give them their hourly rate as long as they submit supporting declarations. And unless you do a really detailed analysis, the most you can cut is 10 percent. Well, but the magistrate judge again referred to Judge Orwick awarding Mr. Padway $650 an hour in the James case. And then there's the attorney, Pearl, who submits a declaration saying that the rate for this kind of work is $675. It seems like a lot to me, but isn't the record substantial in terms of supporting that as a reasonable rate? But the Ninth Circuit also says you can give downward multipliers in unusual cases. And I can't think of a more unusual case when I believe the insurance company made the correct decision, and then evidence that came in after trial essentially changed the court's mind. But wouldn't it have to be unusual based on poor performance, that his performance was worse than the average that justified this rate? Well, I want to get to that. But I mean, I don't think so. I think that it's a variety of factors. And again, if you recall — But you didn't contest the rate — Huh? With evidence. What's that? You did not contest the rate with competing evidence. I mean, usually when you're fighting an hourly fee, you come in with counter-affidavits saying, no, no, no, the prevailing rate is not $675. It's $250. No. And I understand that. But in the Northern District of California, we've lost that argument, basically. I mean, they are getting what they are getting, basically. And it's just — it's perpetuating itself. And the other — Can I correct that if that's the evidence of the — the standard is prevailing rate. And the evidence is that's what the prevailing rate is here, which seems high to me. I agree with Judge Dilley. But if that's the prevailing rate, what's the problem? Well, I think that if sometimes you can give a little bit more guesswork into these attorney's fees claims, you're going to see less of these cases ending up in the Ninth Circuit. If somebody has a $35,000 case, even if they think they only have a 20 percent chance of potentially get $300,000 or $400,000 for that case, if you can bring guesswork back into how much they're going to get in attorney's fees, I think it's going to actually effectuate the purpose of ERISA, which is a low-cost, efficient mechanism to resolve these disputes. And one other thing I'd like to point out. One thing we did point out was we did focus on the quality of work. You know, I think what happened is that Social Security Award masked, you know, the fact that Judge Gilliam did — took the laboring oar and did most of the work. I think we pointed out that, you know, he mentioned Dr. Early 30 times in his opinion. Mr. Padway mentioned him three times, and I'm not sure he cited to it. We pointed out that he spent three pages in his opinion mentioning our medical reviewers. Mr. Padway didn't mention the medical reviewers or give any analysis to them at all. And if you have — and just to emphasize what I'm saying, if you look at the briefs in this case, I fully expect if we lose to get an attorney fee claim of about $100,000. All Mr. Padway did was mostly just quote from the district court and the magistrate judge. So it's — reasons like that is why we're appealing these cases. We need some relief somewhere, or we're going to have to keep on litigating these cases. But I'll — And what should we do if we agree with you? So say we think the attorney fee is too high. Should we set a rate ourselves or reduce the hours ourselves, or do we need to remand it? What do you think should happen? Well, I would think that you would — you know, I think probably the district court would probably be the most appropriate person. I mean, obviously, if you guys — excuse me, if you believe that you could set the rate, I think that's fine. But I believe remand would be the most appropriate. But don't we already have — know what's going to happen if we remand it? I mean, we've got all this information where this lawyer has gotten $650 or $675 an hour. Now, the hours were cut down somewhat by the magistrate, but the rate, as Judge Thomas says, you didn't really contest that below. Aren't you bound now by the record in terms of what was a reasonable rate? We did contest it based on the quality of work. But you didn't file any declarations reflecting what a reasonable rate would be, did you? I believe we filed our own declarations. I don't think we got any declarations from an expert, basically. Thank you, guys. I want to reserve some time for rebuttal. Good morning. I'm Lawrence Padway, representing David Nagy. Mr. Nagy was working as an engineer for Whirlpool. He had a great job, was making no motive to want to, I don't know, go live on disability. In fact, once he realized that he couldn't work, he moved to Georgia to be closer to family so he could get help, and the standard of living is a little bit less there than it is here. It's hard to know where to start. Why don't you start with the Social Security finding or ruling? Because that seems to be important in terms of the decision, does it not? Certainly. How can you import evidence from another proceeding into an administrative law proceeding? In Montour v. Hartford accident, this Court held that Social Security evidence, while it does not bind the district court, is of substantial significance in an ERISA case. And I think the best reason to have That case was the Social Security decision after the decision that was being challenged? No. So do you have any case in which it was? Yes. Well, I don't have any at the circuit level. There are two that we cited in our brief from the Northern District. One is published in the Federal Supplement, that would be why an award should be admitted. And those cases have since been cited by other unpublished district court authority. The only opposing authority, which I find kind of interesting, because the defense reply brief describes it as a sweep of cases, but the only opposing authority in which Social Security information was denied is the Fulks case, which was in Sacramento. And there it was denied because what was offered was the notice of decision only with no information about what the findings were. So if there was an administrative determination in that case, nobody included that part. But isn't there a big difference between a Social Security decision that's rendered before or during the administrative proceedings in ERISA and one that's rendered after in terms of its evidentiary weight? And the idea is if you've had a determination by Social Security administration that there's a permanent disability and the person can't find a job anywhere in the United States economy, that would bear on an ERISA administrator's decision. On the other hand, if you don't have the decision in front of you, there's no way it can affect the decision, is there? Well, that's true. And that's true any time you have later evidence that's brought into an ERISA case, and that's limited. But there are exceptions. And that's set out in the OPEDA case in the context of de novo review, and that's what the district court cited. And the district court actually did this in stages. The first thing it did was it asked for us to bring a motion to have it admitted. And at docket 66, we filed our brief in support of admission and did it as an offer of proof. And so we offered to prove that the Social Security administration, by decision date of January 28, 2015, and then we talk about the findings, but the important part is he, Mr. Nagy, requests the court to allow him to submit the notice of decision dated January 28, 2015, as evidence outside the administrative record and the entire Social Security administration claim file. And was there no transcript? Why are we missing the testimony your opposing counsel was discussing about what the hypothetical was and what the response was? Why do we not have that information? It was about the vocational expert? Right. That was actually included in the decision of the administrative law judge. But there was no transcript of the testimony? No. There is a transcript and there is a complete file. We offered both the decision and the complete file. The defendant did not come into the trial court saying, hey, let's get the complete file. The defendant said, don't admit anything. But, I'm sorry, do you dispute his statement that we don't have a transcript of that testimony by the vocational expert? No, I agree with that. So why don't we have that? Well, we offered it. It was opposed. And the defense did not raise the issue of you can't take one without the other until we got up here. But I think that the Court should have obtained both. Now, I should say a couple of things in that respect. This case was briefed for Judge Chen, who is very experienced in ERISA. And after the final briefing was done, it was transferred to Judge Gilliam, who was just appointed. And I believe this is his first ERISA case. Are you saying he committed error? Is that where you're leading with this? No. What I'm leading to is he took a lot of time and care through this. So once we brought up the Social Security Award at trial, then he had us bring a formal motion where we offered both the award and the claim file. I just think that's a better way to do it. The defendant did not raise the issue of taking in the award with or without the claim file. So the judge granted the motion as to the award. And there was no complaint from the defense at that time. And the judge found there were exceptional circumstances to permit the – Well, it would have to be abuse of discretion as to one of two things. The first was whether this fell into one of the exceptions in the OPEDA case. And the judge issued a written decision on that. And then he said, well, but this also has to be necessary. So he asked for separate briefs on the question of whether or not the award was necessary for him to review. And there were two briefs on each side submitted. And he put his findings into his 24-page order as to how he weighed that and why he decided to admit it. So I don't – you know, there isn't a case where you can't do more. So maybe it is appropriate to take the decision but not the claim file. Maybe you wanted to look at the decision first, see how important it is. And then if you want to go back and ask for more. So, you know, without knowing anything more than what the Court has said, the proper factors were considered. Could I ask you about the attorney's fees? Sure. So I don't understand how you could possibly be entitled to the post-suit administrative proceeding fees. At least that piece they've challenged. I don't even see a response to it in your brief. And all your brief says is that the magistrate judge addressed everything, but that issue was raised and the magistrate judge did not address it. So what is your argument on that point, and why should we consider you not to have waived it? So let me make one preliminary point. The fees do not just relate to a $36,000 own-occupation claim. We have to win the own-occupation claim in order to get to the any-occupation claim, which we have raised. It's been denied. We filed suit, and it's under submission. In a separate case, right? Not this case. Right. So weren't the administrative proceedings? I understand that one is sort of a precursor to the other, but given that we've got two cases, the administrative proceedings that are about the any-occupation are pre-suit to that suit, right? No. And I think it's Williams' case, which talks about in ERISA, when a court remands to the plan administrator, that can be done either in a way where the case is kind of kept open. Right. I understand that, but that's not what — in this case, there are two cases. So we have our case that we're here about today. There's another case in which it's about any-occupation benefits, and the proceedings administratively about any-occupation benefits are about that case. So how are you not pre-suit to that case? And that's not recoverable in this case, I don't think. Well, there are a number of cases. I'm not sure why it's not in our brief, but it's — but Peterson v. Continental Casualty in the Second Circuit. And I know in the transcript, Judge — Magistrate Judge Buehler referred to the Langston case, which was Judge Ilsen's case. And it's done by basically a plain reading of the statute. You know, what makes ERISA odd is, you know, in a civil rights case, if you have to do an administrative proceeding first, you get the fees for the administrative proceeding. ERISA, with basically the same language, has been interpreted so that you don't start to collect attorney's fees until after you file your claim. But the claim that we file is for long-term disability. As a practical matter, the court bifurcates it because they decide the own occupation first. And then they said the thought is, well, the insurance company hasn't done its review of the any-occupation, so let's have them do that, and then we'll see where we are. So if you win the any-occupation suit, are you going to ask for all these fees again? Well, obviously, you only collect the fees once. But you could. If you're denied — if you are denied the fees for post-suit administrative work, you may seek them. You may not get them in the other case, right? Right. Yeah. It's a question of, yeah, which case. And did you say anything in your brief to us about this issue, even though they raised it? As far as I can tell in your brief, you have, like, two sentences of argument about attorney's fees, and they don't mention this. And I'm really struggling with how, when they make at least plausible arguments about whether you're entitled to all these attorney's fees, and you say nothing, how are we supposed to say you're entitled to all the attorney's fees? It doesn't show great attorney work to not respond. And we're supposed to be evaluating whether you did a good enough job in this case. So it's put us in a very awkward spot. Well, haven't you failed by not mentioning it? Haven't you waived that argument here? You might be able to get it later on at a different place, but you really can't ask for it here.  It doesn't. And what about the issue that they argue that you should get your fees that were $600 an hour instead of $675 because that was your rate at the time the work was done? Well, of course, under the case law, which is cited in the magistrate's opinion, I forget which case it is, but that's discretionary. And frankly, if you did go back to a $600 rate and then added interest to it, you'd be pretty close to the same number. I mean, I haven't actually done the computation, but it's not that much difference. But the recognition by this Court is that there is the use of current rates instead of historical rates is discretionary with the Court, and the purpose of it is to provide compensation for the delay in obtaining the fees. And where is that argument in your brief? It's in the I think your argument's on page 30, and I don't see anything addressing this $600 versus $675. It's well covered in the magistrate's report. You have one paragraph that says the fee award's appropriate. Right. Without a case citation. On page 18 of the magistrate's report, which is docket 146. Right. No, I understand that. I'm just saying where is it in your brief, and I don't think it's there. No, I didn't. I simply referred to the magistrate's report and see the point in copying it. Okay. I think we have your argument in hand. Any further questions? Thank you. Thank you. We'll give you two minutes. Can you put two minutes on the clock? Thank you. I would like to just go back when you asked whether or not the district court's admission of the Social Security award is abuse of discretion or de novo. Technically, the district court's interpretation of a risk is de novo, so you could argue that whether or not to take extra record evidence in this case would be decided under a de novo standard review on appeal, basically. But I want to go back to the fees because that's, again, that's what's driving the bus. There's a lot. I mean, I understand that there is a formula that the Ninth Circuit has adopted that all the circuits have adopted that describes how a plaintiff's attorney is supposed to get fees in these cases. However, I do think you're starting to see a lot of manipulation of that formula and the response seems to be there's nothing we can do about it as a court, district court or as an appellate court because they did every they checked all the boxes. And I think that's what they're supposed to do. Huh? That's what they're supposed to do, apply a formula. No, and I understand that. And that's why we're taking this to the Ninth Circuit because I do think this circuit actually How would we change the formula? I don't see I don't see any basis in your briefs for tinkering with how we approach these cases on a formula basis. Well, I determine the find the find the reasonable hourly rate, the prevailing rate, find the number of hours, gauge the work. That's that's where that's we commit that to the district courts. Well, and if you say this is all going wrong, that doesn't give me a rational basis to say, OK, let's not let's not give fee awards in these cases. No, and I understand that. But I do think that the Ninth Circuit again has said you can, in usual cases, have a dot downward multiplier. In this particular situation, you had two different unusual things. You had a Social Security award that Mr. Padway didn't provide for two months. He certainly didn't tell us when the Social Security Administration had denied his client's claim in 2013 or when two doctors basically denied found he could work. And then you also had a situation in which the you had the Social Security award, and then you had the fact that Mr. Padway didn't appear to do $246,000 worth of work in this case. I think a downward multiplier would have been the appropriate application in this case. I felt the magistrate judge didn't think she had the authority to do that. That was the problem. And so I. Kagan. So what you're asking for is a ruling from us that you can give any kind of downward multiplier that you want and that you need to evaluate the work to determine that? That's what you're asking for? No, I think I would I would say you can give an appropriate downward multiplier and you've got to explain the reasons why. And I do think courts are reluctant to give downward multipliers in unusual circumstances. And I think. Because they're hard to explain on appeal. It's hard to explain on appeal why you give a percentage downward multiplier across the board. Don't you think the district courts have that authority now? I think the district courts feel that the most they can give. That wasn't the question. Do they have that authority? I don't think it's as clear as it could be. But yes, they do have that authority. Thank you. I appreciate it. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Thomas, Friedland, Zilly